**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JUNSUB SHIM,

                Plaintiff,

  -against-

LUXURY ASSET CAPITAL, LLC;
LUXURY ASSET CAPITAL HOLDINGS,
LLC; BLCE, LLC D/B/A NEW YORK
LOAN COMPANY; NORA ALETTE
GILLERN; CARMICHAEL GALLERY,
LLC; and SETH CARMICHAEL,

                Defendants.

Civil Action No.:

**COMPLAINT**
**AND JURY DEMAND**

---

      Plaintiff, Junsub Shim ("Plaintiff" or "Shim"), by and through his attorneys, Rivkin Radler

LLP, for his Complaint against defendants, Luxury Asset Capital, LLC ("LAC"); Luxury Asset

Capital Holdings, LLC ("LAC Holdings"); BLCE, LLC d/b/a New York Loan Company

("BLCE"); Nora Alette Gillern ("Gillern"); Carmichael Gallery, LLC ("Gallery"); and Seth

Carmichael ("Carmichael") (collectively, "Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

      1.     This is an action to recover a $2 million painting being withheld from its rightful

owner by a pawnbroker and/or damages resulting from the same.

      2.     Shim bought Infinity Nets (Registration No. 04372) ("Artwork"), a 2016 painting

by Yayoi Kusama, from the Carmichael Gallery, LLC (the "Gallery"). Shim received full title and

the right to exclusive possession upon purchase. Despite this, the Gallery's owner, Seth

Carmichael, and Nora Alette Gillern then pledged the Artwork as collateral for a $500,000 loan

from LAC, LAC Holdings, and BLCE (collectively, "Lender"), who now continue to retain possession of the Artwork despite Shim's requests for its release.

3.      Carmichael and Gillern had no rights in the Artwork. Therefore, under N.Y.U.C.C. 9-203, Lender received no rights in the Artwork. Despite this, Lender refuses to return Mr. Shim's Artwork.

4.      By ignoring Shim's legal ownership, superior right of possession, and demands for return, Lender, Gillern, and Carmichael, are liable for conversion and unjust enrichment. Additionally, Lender is liable in replevin.

## **PARTIES**

5.      Junsub Shim is a citizen of the Republic of Korea, residing in Seoul, South Korea.

6.      Upon information and belief, Defendant LAC is a Delaware limited liability company with its principal place of business in Colorado. It operates New York Loan by Luxury Asset Capital at 110 West 40th Street, New York, NY 10018, a pawnbroker for clients in the New York and Tri-State region.

7.      Upon information and belief, Defendant LAC Holdings is a Delaware limited liability company that operates LAC which operates New York Loan by Luxury Asset Capital at 110 West 40th Street, New York, NY 10018, a pawnbroker for clients in the New York and Tri-State region.

8.      Upon information and belief, Defendant BLCE, LLC is a limited liability company organized under the laws of the State of New York, doing business as New York Loan Company, with its principal place of business at 50 West 47th Street, New York, NY 10036, a pawnbroker for clients in the New York and tri-state region.

9.      Upon information and belief, Defendant Nora Alette Gillern is an individual residing in New York with an address at 141 N 8th St, Brooklyn, NY 11249-2054.

10. Upon information and belief, Defendant Carmichael Gallery, LLC is a limited liability company organized under Florida law with an address at 3208 W. Price Avenue, Tampa, Florida, 33611.

11. Upon information and belief, Defendant Seth Carmichael is an individual residing in Evergreen, Colorado.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship, and because the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367, and under principles of pendent jurisdiction.

13. Additionally, Shim and the Gallery agreed to New York law and the exclusive jurisdiction of New York for any disputes related to their contract.

14. Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

**A. Shim Purchases Title And Exclusive Possession To The Infinity Nets Painting**

15. On December 21, 2021, Shim and the Gallery entered into an Agreement of Sale ("Agreement") for the Artwork. (*See* Ex. A).

16. The Agreement provides that once he pays the Gallery's $2 million invoice, the Gallery will transfer "good, valid and marketable title and exclusive and unrestricted right to possession of the works, free and clear of all claims, liens or encumbrances of any kind." (Exs. A & B).

17. The next day, Mr. Shim wired $2 million to the Gallery's bank account, thus receiving title and the exclusive right to possession the Artwork. (*See* Ex. C).

18.     Mr. Shim possesses the registration card for the Artwork, issued by the artist's corporation, Yayoi Kusama, Inc., dated December 20, 2021, registration number 04372, pictured next to Mr. Shim's passport. (*See* Ex. D).

**B.  Lender Takes Shim's Artwork As Collateral For A Loan To Carmichael And Gillern**

19.     Despite Shim's exclusive right to title and possession of the Artwork, on or about February 3, 2022, without Shim's knowledge, Gillen, on behalf of Carmichael, entered into a loan contract ("Loan Agreement") with BLCE for a loan in the amount of $500,000 with the Artwork as collateral. (*See* Ex. E).

20.     While the Loan Agreement was executed by Gillern as borrower and purported authorized agent of the Artwork's owner, Gillern appointed Carmichael as her "attorney-in-fact" and Lender treats Carmichael as the borrower.[1]

21.     Carmichael directed the storage facility housing the Artwork to transfer it to Lender.

22.     Thereafter, Lender loaned $500,000 to Carmichael with the Artwork as collateral per the Loan Agreement.

23.     Neither Gillern nor Carmichael had any rights to transfer in the Artwork, despite any representations to the contrary, because Shim had purchased all rights months earlier. (*See* Exs. A-D).

24.     In fact, soon after entering into the Loan Agreement, Carmichael admitted to Shim's purchasing agent that on February 3, 2022, he gave the Artwork to Lender, "[w]ell after Shim paid for it."

---

[1] For instance, Lender has claimed that Carmichael, not Gillern, defaulted on the loan.

**C. Shim Demands His Artwork; Lender and Carmichael Ignore And Refuse Him**

25.     Between November 2022 and April 2024, Shim's purchasing agent and Lender exchanged multiple emails regarding the Artwork and Carmichael's loan. The agent asserted multiple times that Shim is the rightful owner and Lender's possession is unlawful.

26.     Shim provided Lender with proof of ownership, including the Agreement and the bank wire confirmation for $2 million to the Gallery.

27.     On June 26, 2024, Shim, through his undersigned counsel, served Carmichael and the Gallery with a letter demanding that they take all necessary actions to effectuate immediate release of the Artwork to Shim. Carmichael and the Gallery failed to respond to this letter.

28.     Also, on June 26, 2024, Shim, through his undersigned, served Lender with a letter again informing Lender that Shim is the rightful owner of the Artwork, and again providing proof of ownership, *i.e.,* the Agreement, Gallery's invoice to Shim, bank wire confirmation for the $2 million purchase, and the registration card for the Artwork.

29.     On August 5, 2024, Shim, through his undersigned counsel, served Lender with a letter demanding the immediate return of the Artwork to Shim, including explaining why Lender never received any interest in the paining under N.Y.U.C.C. 9-203. Despite this, Lender has failed to return the Artwork.

30.     After serving the August 5, 2024 demand letter, undersigned counsel for Shim has communicated with counsel for the Lender in an attempt to resolve this dispute, but which has not resulted in a return of the Artwork.

31.     Accordingly, Shim was left with no option but to bring this action.

## COUNT ONE
### (Conversion – against all Defendants)

32.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

33.    The property subject to conversion is a specific identifiable thing, to wit, the Artwork.

34.    Shim acquired ownership, title, and the exclusive right to possession of the Artwork on or about December 22, 2021, months before Carmichael and Gillern gave the Artwork to Lender on February 3, 2022, as collateral for a loan.

35.    Shim's rights to the Artwork are established by, *inter alia*, the Agreement, the invoice, the registration card, and the bank wire confirmation.

36.    Lender exercised unauthorized dominion over the Artwork to the exclusion of Shim's sole rights to title and possession because, *inter alia*, it had proof of Shim's ownership, title, and right to exclusive possession, yet refused Shim's demands for his Artwork.

37.    Shim provided Lender with proof of ownership of the Artwork on, *inter alia*, March 8, 2024. Then, on June 26, 2024, Shim demanded Lender immediately return the Artwork to Shim by August 8, 2024. Lender, however, has refused.

38.    Carmichael, Gillern, and the Gallery exercised unauthorized dominion over the Artwork to the exclusion of Shim's rights to title and exclusive possession because, *inter alia*: (i) Shim, as admitted by Carmichael, bought the Artwork well before they transferred it to Lender; (ii) Gillern misrepresented herself as an authorized agent of the Artwork's owner; and (iii) all the above referenced documents establish that Shim acquired ownership, title, and the right to exclusive possession before the loan.

39.    As a result of the foregoing, Shim has incurred and will continue to suffer damages.

## COUNT TWO
### (Replevin – against Lender)

40.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

41.     Shim lawfully acquired the exclusive and superior right of possession to the Artwork on or about December 22, 2021.

42.     Despite this, Lender accepted physical "possession" of the Artwork from Carmichael on February 3, 2022, and Lender still retains possession of it.

43.     Shim has, on multiple occasions, told Lender that he is the rightful owner and provided proof of same, including on March 8, 2024.

44.     On August 5, 2024, Shim unambiguously demanded Lender immediately release the Artwork to its rightful owner.

45.     Lender has refused to do so and continues to keep the Artwork from Shim despite receiving documented proof of Shim's ownership.

46.     Shim is entitled to immediate possession of the Artwork and requests an order that Lender immediately return the Artwork to Shim and/or enter judgment for a sum to be determined at trial but in no event less than $2,000,000 plus any appreciation in market value since December 22, 2021, and interest, costs, expenses, as well as reasonable attorney's fees incurred in the prosecution of this action

## COUNT THREE
### (Unjust Enrichment – against all Defendants)

47.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

48.     Defendants unlawfully harmed Shim by depriving him of his lawfully acquired rights in the Artwork and converting the Artwork for their benefit to his detriment.

49.     Carmichael, Gillern, and the Gallery have profited and enriched themselves unjustly by at least $500,000 at the expense and detriment of Shim.

50.     Lender has enriched itself unjustly by at least $1,500,000 at the expense and detriment of Shim

51.     Defendants should not be permitted in equity and good conscience to retain property that rightfully belongs to Shim.

52.     As a result of the foregoing, Shim has incurred and will continue to suffer damages.

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

(i)     For permanent injunctive relief compelling Lender to immediately release and return the Artwork to Plaintiff;

(ii)    Awarding Plaintiff actual, compensatory and consequential damages of not less than $2,000,000;

(iii)   Awarding Plaintiff punitive damages;

(iv)    Awarding Plaintiff his attorneys' fees, costs and disbursements; and

(v)     Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: December 17, 2024

By: _____
Gene Y. Kang
**RIVKIN RADLER LLP**
25 Main Street, Suite 501
Court Plaza North
Hackensack, New Jersey 07601
P: (201) 287-2489
F: (201) 489-0495
gene.kang@rivkin.com

-and-

477 Madison Avenue
New York, New York 10022
P: (212) 455-9555
F: (212) 687-9044

*Attorneys for Plaintiff, Junsub Shim*

9

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), plaintiff, Junsub Shim hereby demands a trial by jury of

any issue so triable as of right.

Dated: December 17, 2024

Gene Y. Kang
**RIVKIN RADLER LLP**
25 Main Street, Suite 501
Court Plaza North
Hackensack, New Jersey 07601
P: (201) 287-2489
F: (201) 489-0495
gene.kang@rivkin.com

-and-

477 Madison Avenue
New York, New York 10022
P: (212) 455-9555
F: (212) 687-9044

*Attorneys for Plaintiff, Junsub Shim*

# EXHIBIT A

## AGREEMENT OF SALE

**THIS AGREEMENT OF SALE** ("**Agreement**") is made and entered into as of December 21, 2021 by and between:

Seller: Carmichael Gallery  LLC (the "Seller")

Buyer: Shim Junsub

**W I T N E S S E T H:**

**WHEREAS**, the Seller is the agent of the ultimate owner of the works of art more fully described on Invoice 20746 attached hereto and made a part hereof (the "**Works**"), and is authorized to sell the works on behalf of the owner.

**WHEREAS**, the Seller has agreed to sell the works to the Buyer and the Buyer has agreed to buy the works from the Seller, on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises contained in this Agreement, the parties agree as follows:

1. **Purchase Price and Manner of Payment**. The purchase price for the works is Two Million US Dollars ($2,000,000.00) (the "Purchase Price"). Payment shall be made by bank transfer in immediately available funds in accordance with the wire instructions set forth on Invoice 20746 attached to this Agreement. The Buyer shall be responsible for all wire fees associated with this payment.

2. **Representations and Warranties of Seller**. The Seller represents and warrants to the Seller as follows:

    1. (i) Seller has the unfettered right to sell the works in accordance with the terms of this Agreement;

    2. (ii) On the date of the Closing (as defined below), subject only to the Seller's payment of the Purchase Price in accordance with this Agreement, the Seller will transfer good, valid and marketable title and exclusive and unrestricted right to possession of the works, free and clear of all claims, liens or encumbrances of any kind.

    3. (iii) Seller has the full right, title and legal authority to execute and deliver this Agreement, and is and will be able in accordance with this Agreement to transfer the works to the Buyer.

    4. (v) Each of the warranties made by the Seller in this Agreement is correct and accurate in all material respects. Notwithstanding anything to the contrary in this Agreement, the Seller shall be liable to the Buyer by reason of any representation or implied warranty, condition or other term or any duty at common law, or under the express terms of this Agreement, for any consequential loss or damage (whether for loss of profit or otherwise and whether occasioned by the negligence of the Seller or its employees or agents or otherwise) arising out of or in connection with any act or omission of the Seller relating to the supply of the works.

3. **Title**. The Seller and the Buyer agree that the sale of the work and the transfer of title from the Seller to the Buyer (the "**Closing**") shall take place forthwith after the Buyer has paid the Purchase Price in full as provided in this Agreement.

4. **Expenses**. Shall the works not be purchased according to the terms of this agreement, the Buyer agrees to pay for the transportation and other related costs incured to date, including, without limitation, interest on financing, costs relating to packing, transport and storage and insurance of the works.

5. **Taxes**. The Buyer agrees to pay any and all sales or use taxes and custom duties payable arising from the Buyer's acquisition of the works in accordance with this Agreement.

6. **Confidentiality**. Both the Buyer and the Seller acknowledge that the provisions and subject matter of this Agreement, including but not limited to the identity of the Buyer and the works and the Purchase Price, are confidential and each of the Buyer and the Seller agrees not to disclose any of the forgoing information to any person or entity, except as may be required by law or with the written permission of the party. This Clause shall survive termination of this Agreement.

7. **Governing Law**. Unless otherwise agreed by the parties, this Agreement shall be governed by the laws of New York, NY. Any dispute arising from or in connection with this Agreement shall be subject to the exclusive jurisdiction of the courts of New York, NY.

8. **Amendment**. This Agreement may not be amended, waived or otherwise modified except by a written instrument signed by the Seller and the Buyer.

9. **No Rights in Third Parties**. Nothing express or implied in this Agreement is intended to confer upon any person, other than the Seller and the Buyer, and their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have hereunto signed their names below as of the day and year first-above written.

Seller: **Carmichael Gallery LLC** By:

Name: Seth Carmichael

_____

Buyer: **Shim Junsub**

_____

# EXHIBIT B

# INVOICE

**From:** Carmichael Gallery LLC                                                              **20746**
3208 W. Price Ave
Tampa, FL 33611                                                                                12/20/2021
United States

**To:** Shim Junsub
Gangnamgu, dosandaero 158, 601ho
Seoul
South Korea

| DESCRIPTION | Total |
|---|---|
| Yayoi Kusama<br>APRU, 2016<br>Acrylic on canvas<br>130h x 130w cm<br>51.18h x 51.18w in<br>YK001026 | |
| | **$ 2,000,000.00** |
| Subtotal | $ 2,000,000.00 |
| Sales Tax (0%) | $ 0.00 |
| **Total** | **$ 2,000,000.00** |

**TERMS**

Thank you for your purchase. Payment is due within 3 days upon receipt of invoice. Seller reserves the right to cancel the sale if payment is not received within this time. Purchaser is responsible for any taxes and duties due. Title will not pass until payment is received in full. This invoice does not constitute a binding sale until payment is received in full. Upon receipt of payment work shall be released to Purchaser.

Please arrange payment via wire transfer to:

Carmichael Gallery LLC

Bank Of America
9461 Wilshire Blvd.
Beverly Hills, CA
SWIFT #: BofAUS3N
ABA#: 026009593
Account#: 0213560907

# EXHIBIT C

해외로 보내는 **외화송금확인서** Shinhan Bank
CERTIFICATE OF REMITTANCE

신 준 섭 　귀하　　　　송금일자(DATE) 2021-12-22

항상 신한은행을 이용해 주셔서 감사합니다.
동일수취인 앞으로 다시 송금하시고자 하는 경우에는 이 확인서를 가지고 오시면 더 빠르게 처리해드립니다.
개인송금, 유학생경비, 일반해외체재비는 인터넷 뱅킹을 이용하여 고객이 직접 송금거래를 할 수 있으며, 송금수수료 및 환율을 우대하여 드립니다.

| REF-No. 810-279177740 | | 송금액 (AMOUNT) : USD | 2,000,000.00 |
|---|---|---|---|

MT103 SINGLE CUSTOMER CREDIT TRANSFER
INTERMEDIARY BANK(중계은행)　　　　　　　　　:

: 20 / SENDER'S REFERENCE(송금번호)　　　　　:　810-279177740

: 23E / INSTRUCTION CODE(지시코드)　　　　　　:

: 32A / VALUE DATE / CURRENCY / INTERBANK SETTLED AMOUNT　:　211222USD2000000,
　　　(지급일자/통화/송금액)

: 50K / ORDERING CUSTOMER(송금인)　　　　　:　SHIM JUN SUB
　　　　　　　　　　　　　　　　　　　　　　　601HO, 158, DOSAN-DAERO, GANGNAM-GU
　　　　　　　　　　　　　　　　　　　　　　　, SEOUL
　　　　　　　　　　　　　　　　　　　　　　　SOUTH KOREA

: 57 / BENEFICIARY BANK(수취은행)　　　　　　:　//FW026009593
　　　　　　　　　　　　　　　　　　　　　　　BANK OF AMERICA
　　　　　　　　　　　　　　　　　　　　　　　9461 WILSHIRE BLVD. BEVERLY HILLS,
　　　　　　　　　　　　　　　　　　　　　　　CA

: 59 / BENEFICIARY CUSTOMER(수취인)　　　　:　0213560907
　　　　　　　　　　　　　　　　　　　　　　　CARMICHAEL GALLERY LLC
　　　　　　　　　　　　　　　　　　　　　　　3208 W. PRICE AVE TAMPA, FL 33611
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES

: 70 / REMITTANCE INFORMATION(송금내역)　　:

: 71A / DETAILS OF CHARGES(해외중계수수료 부담자)　:　OUR
: 72 / SENDER TO RECEIVER INFORMATION(은행간 지시사항)　:

| 거 래 일 | 거래외국환은행 지정(확인) 번호 | 거래구분 | 송금종류 | 송금인구분 | 거주자구분 | 국가코드 |
|---|---|---|---|---|---|---|
| 20211222 | | 취결 | T/T | 민간 | 거주자 | US |
| 지급 사유 | 10101(사전송금방식 통관수입 대금지급) | | | | | |
| 기타 사항 | 스캔필/ 중계수수료 OUR선택시에도 수취인이 수수료를 추가 부담할 수 있음 | | | | | |

귀하께서 신청하신 외화송금을 위와 같이 처리하였음을 확인합니다. 해외중계은행은 고객께서 지정하지 않으신 경우 변경될 수 있습니다.
We hereby certify that overseas remittance will be made as above.
INTERMEDIARY BANK may vary unless specifically designated by customer.

신한은행 남구정중앙　　　　　지점
(02 -543 -0501)
담당자　확인자　결재권자

# EXHIBIT D

# Registration card for Yayoi Kusama works
## 草間彌生作品登録カード

This registration card indicates the work identified by the registration number and title as registered as a Yayoi Kusama work, as of the date of issuance of this card, in the list of works prepared and managed by YAYOI KUSAMA Inc. This card does not function as a certificate evidencing the value of the work and we do not guarantee its market value, materials, years of production or other information relating to the work, even if such information is contained in the list or this card.

Although the list of registered works includes information on the size of each work, title indicated on the work, year, materials and techniques used, and other information indicated on the work, we may modify such information in the list as may be necessary from time to time.

この登録カードは、登録番号及び作品タイトルにより特定される作品が、草間彌生を草間彌生作品として、株式会社草間彌生が作成・管理する作品リストに登録されたことを示しています。登録カードは、作品の価値を示す証明書として機能するものではなく、作品リスト又は登録カードにおける記載の有無に関わらず、株式会社草間彌生は作品の市場価値、素材、制作年代等の作品に関する事項を保証いたしません。

登録作品リストには作品サイズ、作品に記載されたタイトル表記、西暦、素材、技法その他の情報が含まれますが、株式会社草間彌生は、その作成・管理する作品リストにおいて、上記の作品関連情報を必要な限度で修正することがあります。



| | |
|---|---|
| **Registration No.**<br>登録番号 | **04372** |
| **Title**<br>タイトル | INFINITY-NETS<br>(APRU) |
| **Date of Issue**<br>登録日 | 2021/12/20 |

Please always store the registration card with the relevant work.

For registration inquiries, please contact us by email with images of the work (overall images of the work as well as details of the signature, title and year) and the registration number. Inquiries may be made free of charge.

At the time of registration and inquiry, we will record the address, name and telephone number of the contacting person together with the work-related information, but such information will not be disclosed to any third party without good reason.
Privacy policy is on official website *yayoi-kusama.jp*

Reproduction or distribution of this card is strictly prohibited.

登録カードは、作品と一緒に大切に保管してください。

登録照会は、作品画像（作品全体およびサイン・タイトル・年代部分の詳細）と登録番号を添えてメールでお問い合わせください。登録照会に費用はかかりません。

作品登録時、照会時にはお問い合わせ元の住所、氏名、電話番号を作品情報と併せて記録いたしますが、みだりに第三者に公開されることはございません。プライバシーポリシーに関しては公式ウェブサイトyayoi-kusama.jpでご案内しています。

このカードの複製・転載・配布を禁じます。

**YAYOI KUSAMA Inc.  株式会社草間彌生**
## registration@yayoi-kusama.jp
Tel/fax +81 (0)3 6825 3988

**YAYOI KUSAMA INC.**



# EXHIBIT E

No pledged Collateral will be sold prior to redemption.
No personal or business checks or credit cards accepted at redemption.

**THIS IS A PLEDGE AND NOT A SALE**
DCA Lic. # 2088978

The Finance Charge consists of the Service Fee, Interest, Insurance Fee, and Extra Care Charges shown below.

| | | |
|---|---|---|
| **AMOUNT FINANCED.** The amount of cash advanced or credit extended to you | $500,000.00 | |
| **FINANCE CHARGE.** The dollar amount the credit will cost you. | $40,010.00 | |
| **TOTAL OF PAYMENTS.** Amount required to redeem pawn on Date Due. | $540,010.00 | |
| **ANNUAL PERCENTAGE RATE.** The cost of your credit as a yearly rate. | 24.01% | |
| **DATE DUE** | 6/3/2022 | |

**NEW YORK LOAN COMPANY**

Member of Collateral Loanbrokers Association of New York & National Pawnbrokers Association

50 West 47th Street, Suite 319
New York, NY 10036
212.997.LOAN (5626) · 855.957.LOAN (5626)
www.newyorkloan.com

| | | |
|---|---|---|
| Service Fee | | **LOAN NO.** |
| $10.00 | | LT-PG2000253 |
| Interest | | Original Loan No. |
| $40,000.00 | | LT-PG2000253 |
| Insurance Fee | | Insured Value |
| {Declined} | | $0.00 |
| EXTRA CARE CHARGES | | Loan Date |
| Vault Storage Fee | | 2/3/2022 |
| $0.00 | | Loan Time |
| | | 4:15 PM |

PAYMENT SCHEDULE: Total of Payments is due on Date Due shown above.    PREPAYMENT: Payment in full prior to the Date Due may result in a reduction of the Finance Charge.

You ("Borrower") are pledging to New York Loan Company ("Collateral Loan Broker") a security interest in the following property ("Collateral"):

YAYOI KUSAMA, INFINITY NETS (APRU), 2016. ACRYLIC ON CANVAS, 51.25 X 51.25 IN. STORED AT/MUST COLLECT AT ATELIER4 LA.

**A MINIMUM OF TWO BUSINESS DAYS' PRIOR NOTICE REQUIRED FOR REDEMPTION**

| REDEMPTION AMOUNTS | | Borrower's Name, Address, Email Address, and Phone Number |
|---|---|---|
| ON OR BEFORE: | 3/3/2022 | NORA ALETTE GILLERN |
| AMOUNT DUE: | $510,010.00 | 141 N 8TH RH2 BROOKLYN NY 11249 |
| ON OR BEFORE: | 4/3/2022 | (215) 837-2869 |
| AMOUNT DUE: | $520,010.00 | |
| ON OR BEFORE: | 5/3/2022 | |
| AMOUNT DUE: | $530,010.00 | |
| ON OR BEFORE: | 6/3/2022 | |
| AMOUNT DUE: | $540,010.00 | |

| Itemization of the Amount Financed of |
|---|
| $500,000.00 |
| Amount given to you directly |
| $500,000.00 |
| Amount credited to prior loan |
| $0.00 |

I am the _____ owner ☐ authorized agent of the owner of the above mentioned Collateral and I am of legal age and have the legal right to pawn the same and I have carefully read and hereby agree to all the terms and conditions of this loan and pledge, as contained on both sides of this Loan Contract delivered to me and acknowledge receipt of a copy of this Loan Contract, which contained the required Federal Truth in Lending Act disclosure statement.
I hereby ☐ request, _____ do not request, that Collateral Loan Broker retain this signed original Loan Contract and acknowledge receipt of a duplicate copy.

**STORE COPY**

I acknowledge that if I lose this Loan Contract, I will be charged a fee to replace it.

Borrower's Signature: **X** _____

Date & Time Printed:   2/3/2022 4:16:52 PM

By signing, I am stating that I agree that the Collateral will be stored in accordance with the terms of this Loan Contract, that I have read and fully and completely understand the terms and conditions on the front and back of this Loan Contract and agree to them as a part of this Loan Contract as if they were printed above my signature, that all information given is true and correct, and that all blanks were filled in prior to my signing.
NOTICE TO BORROWER: All capitalized terms not defined on the front of this Loan Contract shall have the meanings ascribed to such terms on the reverse side.
By initialing below, you agree to the following terms and conditions:

**1. CHANGE OF ADDRESS:** Borrower must promptly notify Collateral Loan Broker of any change of address either in person or in writing sent via registered mail, return receipt requested. The notice must include Borrower's name, new mailing address, telephone number, a copy of Borrower's photo ID and loan number(s). If Borrower desires Collateral Loan Broker to respond to such notice, Borrower must provide a postage paid, self-addressed envelope for such reply.

1. **X** _____ Borrower's Initials

**2. FEES:** The Insurance Fee and Extra Care Charges shown above, if any, will accrue on a pro-rated monthly basis until such time as the Collateral has been redeemed.

2. **X** _____ Borrower's Initials

**3. INSURANCE:** Borrower is solely responsible for insuring the Collateral. Notwithstanding the forgoing, Collateral Loan Broker has offered and Borrower has elected additional coverage in the maximum amount shown above as the "Insured Value." If the "Insured Value" is $0, Borrower has declined coverage offered by Collateral Loan Broker.

3. **X** _____ Borrower's Initials

**4. MILITARY LENDING ACT:** Borrower acknowledges that Collateral Loan Broker does not offer any loan product that complies with the Military Lending Act (10 U.S. Code § 987). As a material term of this contract, Borrower warrants that Borrower is neither a member of, nor a dependent of a member of, the US armed forces who is: i) on active duty under a call or order that does not specify a period of 30 days or less, or ii) on active Guard and Reserve Duty.

4. **X** _____ Borrower's Initials

**5. 3RD PARTY AUTHORIZATION:** Borrower hereby appoints      SETH CARMICHAEL      as Borrower's attorney-in-fact and authorizes him/her to (1) sign all documents related to this Loan Contract and all New Loan Contracts on behalf of Borrower with the same force and effect as though they were signed by Borrower directly and (2) redeem and take possession of the Collateral. In no event shall Collateral Loan Broker be required to verify the identity of any person claiming to be Borrower's attorney-in-fact and shall only confirm that the name above matches the ID provided by such person. If Borrower wants to terminate this appointment, Borrower must notify Collateral Loan Broker via written notice, which shall be signed, dated, and state: "I hereby terminate [person named above] as my attorney-in-fact." No termination of this appointment via written notice will be effective until such notice is actually received by Collateral Loan Broker. If Borrower desires that Collateral Loan Broker acknowledge receipt, Borrower must provide a postage paid, self-addressed envelope.

5. **X** _____ Borrower's Initials

**6. LIMITATION OF LIABILITY; CROSS-COLLATERALIZATION:** Borrower acknowledges that any and all claims by Borrower against Collateral Loan Broker, by reason of Borrower having elected the additional coverage offered by Collateral Loan Broker, shall be limited to the "Insured Value." If Borrower has declined insurance coverage offered by Collateral Loan Broker, Collateral Loan Broker shall not be liable for any loss or destruction of the Collateral unless arising out of Collateral Loan Broker's gross negligence or willful misconduct, in which case, Borrower's recourse shall be limited to Collateral Loan Broker' forgiveness of the loan principal, interest, fees, and other charges. Any claim for damages against Collateral Loan Broker must be brought within one year from the earlier of the date the claim accrued or the expiration of the Term of this Loan Contract. Borrower waives any statute of limitations to the contrary. Borrower agrees that the Collateral securing this Loan Contract shall serve as collateral for any and all other loans Borrower has presently or may have in the future with Collateral Loan Broker. In the event Borrower is in default on another loan, Collateral Loan Broker may refuse to release the Collateral that secures this loan until Borrower has cured such default.

6. **X** _____ Borrower's Initials

**ALL BUSINESS STRICTLY CONFIDENTIAL · NOTICE: SEE THE REVERSE SIDE FOR MORE TERMS AND CONDITIONS**

Pwn:Beverly-01 NY