UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X
                                                        :
JUNSUB SHIM,                                            :
                                                        :
                           Plaintiff,                   :
                                                        :
              -v-                                       :        24 Civ. 9738 (JPC)
                                                        :
LUXURY ASSET CAPITAL, LLC, *et al.*,                    :        OPINION AND ORDER
                                                        :
                           Defendants.                  :
                                                        :
----------------------------------------------------------------------- X

JOHN P. CRONAN, United States District Judge:

Plaintiff Junsub Shim bought a painting from Defendant Carmichael Gallery, LLC.  But instead of delivering the painting to Plaintiff, the Gallery's owner, Defendant Seth Carmichael, pledged the painting as loan collateral to Defendant Luxury Asset Capital, LLC ("LAC").  Seth Carmichael has since defaulted on that loan, so LAC has retained possession of the painting.  Plaintiff's remaining claims against LAC are for conversion, replevin, and unjust enrichment.  LAC moves to dismiss those claims, arguing that the painting's title never transferred to Plaintiff and that it has not been unjustly enriched by keeping the painting.  Because the Court agrees with LAC, its motion to dismiss is granted.

## I. Background

### A.    Facts[1]

Plaintiff sought to purchase a painting from the Carmichael Gallery, owned by Seth Carmichael.  Am. Compl. ¶ 2.  On December 20, 2021, the Gallery sent Plaintiff an invoice with a description of the work and its price, stating that "[t]itle will not pass until payment is received in full."  Am. Compl., Exh. B ("Invoice").  That same day, the artist issued a registration card for the painting to Plaintiff.  Am. Compl. ¶ 17; Am. Compl., Exh. D.  The next day, December 21, 2021, Plaintiff and the Gallery signed an Agreement of Sale, governed by New York law.  Am. Compl. ¶ 14; Am. Compl., Exh. A ("Agreement") § 7.  The Agreement, which attached and "made a part hereof" the Invoice, provides that "the sale of the work and the transfer of title from the Seller [*i.e.*, the Carmichael Gallery] to the Buyer [*i.e.*, Plaintiff] (the 'Closing') shall take place forthwith after the Buyer has paid the Purchase Price in full as provided in this Agreement."  Agreement § 3 ("Title Provision").  And the Carmichael Gallery "represent[ed] and warrant[ed]" that "[o]n the date of the Closing . . . subject only to [Plaintiff's] payment of the Purchase Price in accordance with this Agreement, the Seller will transfer good, valid and marketable title and exclusive and unrestricted right to possession of the works, free and clear of all claims, liens or encumbrances of any kind."  *Id.* § 2.2 ("Representations and Warranties Provision").

---

[1] The facts contained in this section, which are assumed true solely for purposes of this Opinion and Order, are taken from Plaintiff's Amended Complaint, including the exhibits attached thereto, Dkt. 8 ("Am. Compl."message").  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").  The Court also considers the loan contract attached to the declaration of Judd B. Grossman, Dkt. 32 ("Grossman Decl."), which is incorporated by reference into the Amended Complaint, *see, e.g.*, Am. Compl. ¶ 18.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019).

On December 22, 2021—the day after signing the Agreement—Plaintiff paid the Purchase Price by wiring funds to the Gallery's bank account.  Am. Compl. ¶ 16; Am. Compl., Exh. C.  But the Gallery never delivered the painting to Plaintiff.  Am. Compl. ¶ 56.  Rather, on February 3, 2022, Seth Carmichael (the Gallery's owner), through his agent, Nora Alette Gillern, pledged the painting as collateral for a $500,000 loan from LAC, which took possession of the painting.  *Id.* ¶¶ 2, 18-21; Grosman Decl., Exh. 1.  Seth Carmichael has since defaulted on the loan.  Am. Compl. ¶ 19 n.1.

On multiple occasions between November 2022 and April 2024, Plaintiff's purchasing agent emailed LAC to assert that Plaintiff rightfully owns the painting and that LAC's possession is unlawful.  *Id.* ¶¶ 24-25.  On June 26, 2024, Plaintiff's counsel sent LAC a letter reiterating Plaintiff's ownership of the painting, and on August 5, 2024, Plaintiff's counsel sent LAC a letter demanding that LAC return the piece, to no avail.  *Id.* ¶¶ 27-30.

## B.    Procedural History

Plaintiff first filed suit on December 18, 2024 against LAC, the Carmichael Gallery, Seth Carmichael, Gillern, and two other entities not relevant here.[2]  Dkt. 1.  On January 8, 2025, Plaintiff filed the operative Amended Complaint.  Dkt. 8.[3]  The Amended Complaint asserts six state-law causes of action: (1) conversion against all Defendants, Am. Compl. ¶¶ 31-38; (2) replevin against LAC, *id.* ¶¶ 39-45; (3) unjust enrichment against all Defendants, *id.* ¶¶ 46-51; (4) breach of contract against the Gallery, *id.* ¶¶ 52-57; (5) common law fraud against the Gallery and Seth

---

[2] Plaintiff has since voluntarily dismissed his claims against those entities, Luxury Asset Capital Holdings, LLC and BLCE, LLC *d/b/a* New York Loan Company.  Dkt. 22.

[3] An unredacted version of the Amended Complaint is filed under seal.  After the Court found that "Plaintiff's interest in maintaining the confidentiality of the purchase price of the artwork . . . and of his personal information outweighs the presumption of full public access," Dkt. 9, Plaintiff filed a partially redacted version of the Amended Complaint on the public docket, Dkt. 10.

3

Carmichael (mistakenly labeled as *id.* ¶¶ 54-59); and (6) aiding and abetting fraud against Gillern and LAC (mistakenly labeled as *id.* ¶¶ 60-66).  Among other things, the Amended Complaint seeks a permanent injunction "compelling" LAC "to immediately release and return the Artwork to Plaintiff" and "actual, compensatory and consequential damages of not less than the Purchase Price."  *Id.* at 11.

On March 20, 2025, Plaintiff voluntarily dismissed its aiding-and-abetting-fraud claim against LAC, which as of that date had been the only Defendant to be served and to appear.  Dkt. 17 at 1.  On March 26, 2025, the Court extended Plaintiff's deadline to serve the Gallery, Seth Carmichael, and Gillern until May 26, 2025, at which point Plaintiff would file certificates of service for those Defendants or update the Court regarding the status of service.  Dkt. 21.  The Gallery was served on May 2, 2025, but did not appear by its deadline to answer, Dkt. 28; Plaintiff sought a certificate of default, Dkts. 37-38, which the Clerk's Office issued on June 20, 2025, Dkt. 39.  Plaintiff moved for substitute service with respect to Seth Carmichael and Gillern on July 7, 2025.  Dkts. 41-44.  On October 31, 2025, the Court granted Plaintiff's motion to serve Seth Carmichael by email, but denied the motion as to Gillern; for both parties, the service deadline was extended to December 22, 2025.  Dkt. 52.  Seth Carmichael was served on November 4, 2025, Dkt. 53, but did not appear by his deadline to answer; the Court *sua sponte* extended his deadline to respond to the Complaint until January 9, 2026, at which point Plaintiff was allowed to seek a certificate of default.  Dkt. 58.  That deadline having passed without Seth Carmichael's response, Plaintiff sought a clerk's certificate of default, Dkts. 64-65, which was issued on January 20, 2026, Dkt. 66.  And on February 13, 2026, Plaintiff voluntarily dismissed his claims against Gillern. Dkts. 69-70.

Meanwhile, the Court set a briefing schedule on LAC's anticipated motion to dismiss.  Dkt.

25.    Consistent with that briefing schedule, on May 19, 2025, LAC filed its motion to dismiss Plaintiff's surviving claims against it, for conversion, replevin, and unjust enrichment.  Dkts. 30, 31 ("Motion"); Grossman Decl.  Plaintiff responded on June 18, 2025.  Dkt. 36 ("Opposition").  LAC replied on July 2, 2025.  Dkt. 40 ("Reply).

## II.  Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III.  Discussion

LAC moves to dismiss Plaintiff's conversion, replevin, and unjust-enrichment claims with prejudice.  As Plaintiff fails to plead those claims as a matter of law, and fails to explain how any additional factual allegations would change that conclusion, *see* Opposition at 14, the Court grants LAC's motion.  *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025) (finding no abuse of discretion in the district court's dismissal of a complaint without leave to amend where

the plaintiff requested leave in an opposition brief, but did not explain how the complaint's defects would be cured).

## A.    Conversion and Replevin

"Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (internal quotation marks omitted). To state a conversion claim, a "plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Id.* (internal quotation marks omitted). The claim's "[t]wo key elements" are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id.* (internal quotation marks omitted).

In New York, the "law of replevin governs actions for the recovery of stolen or wrongfully detained property." *Doré v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010). A replevin claim "must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right." *Id.* (quoting *Batsidis v. Batsidis*, 778 N.Y.S.2d 913, 913 (2d Dep't 2004)). "[E]ssential elements of a cause of action in replevin" are "[d]emand upon, and refusal of, the person in possession of the chattel to return it." *Id.* (internal quotation marks omitted).

"The difference between a claim for replevin and a claim for conversion" is one of remedy: replevin claims allow the plaintiff "to have his property back." *Am. Stock Transfer & Tr. Co. v. Sykes*, No. 20 Civ. 1809 (KAM), 2020 WL 7698938, at *4 (E.D.N.Y. Dec. 28, 2020) (internal quotation marks omitted). So for the purposes of this motion to dismiss, Plaintiff's conversion and

replevin claims center on similar elements: whether Plaintiff has adequately pleaded that he "had title, possession, or control of the [painting] alleged to have been converted or that [he] had a superior right to the" painting. *Batsidis*, 778 N.Y.S.2d at 913. And those elements, the parties agree, turn on one question: Does Plaintiff have title to the painting? *Compare* Motion at 7 ("Plaintiff never obtained title, so his title-based claims of conversion and replevin fail as a matter of law."), *and* Reply at 1 ("Plaintiff agrees that if he never took title to the Painting, then he has no viable conversion or replevin claims against LAC."), *with* Opposition at 5, 10 (arguing that Plaintiff "adequately plead[s]" claims for conversion and replevin because he "alleged that he took title to the Artwork when he paid for it pursuant to the fully executed Agreement").

Section 2-401 of New York's Uniform Commercial Code ("UCC") "governs the determination of when title passes from seller to buyer. The section provides that '[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods.'" *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1101 (2d Cir. 1990) (quoting N.Y. U.C.C. § 2-401(2)). Put differently, "[u]nder Section 2-401, title to property generally passes to the buyer of property at the time of the physical delivery of the goods." *Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art*, 324 F. App'x 117, 119-20 (2d Cir. 2009); *accord In re Emergency Beacon Corp.*, 665 F.2d 36, 41 (2d Cir. 1981). The parties may contract around that general rule, but they must "explicitly agree[]" to do so. N.Y. U.C.C. § 2-401(2). If the contract does not "explicitly identify when title passes," then Section 2-401(2)'s "default rule" applies, *United States v. Chowaiki*, 369 F. Supp. 3d 565, 575 (S.D.N.Y. 2019), and title passes only "upon delivery," *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, No. 98 Civ. 5566 (CM), 2002 WL 413808, at *45 (S.D.N.Y. Mar. 18, 2002).

Because it is undisputed that the Gallery never delivered the painting to Plaintiff, Am. Compl. ¶ 56, the issue is whether the parties explicitly identified that title passed at another time. To resolve that issue, the Court looks to the Agreement itself and is "not constrained to accept the allegations of the complaint in respect of the construction of the Agreement." *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995). *Contra* Opposition at 9 (emphasizing that "LAC's motion to dismiss should be denied" "based [on] Plaintiff's allegations" about the Agreement's meaning).

Plaintiff argues that "the Agreement expressly provides that title passed at closing upon Mr. Shim's payment for the Artwork." Opposition at 6. But neither the Invoice nor the Agreement incorporating it explicitly identify that title passed upon payment, not delivery. The Invoice— which was "made a part" of the Agreement, Agreement at 1—specifies that "[t]itle will not pass until payment is received in full." Invoice. Such language says only "when title shall *not* pass," and "leaves open the question of when title actually does pass—is payment a sufficient condition for the passage of title, or merely a necessary condition?" *Chowaiki*, 369 F. Supp. 3d at 575. Since the Invoice "is silent on this question," it is not "sufficiently 'explicit' about when title to the Work would pass" to "escape" the UCC's "default rule." *Id.* at 574-75.

While Plaintiff asserts that the Invoice "is superseded by the fully executed Agreement," Opposition at 8, his reliance on the Agreement fares no better. Plaintiff points to Section 2.2, which he claims "alone proves that title passed to Mr. Shim." *Id.* at 6. Not so. That provision specifies that the Gallery "will transfer good, valid and marketable title" "subject only to [Plaintiff]'s payment of the Purchase Price" "[o]n the date of the Closing (as defined below)." Representations and Warranties Provision. Even setting aside LAC's argument that this provision "only warrants and describes the quality of the title to be transferred," Reply at 3, the defined date

of the Closing is not explicitly the date Plaintiff paid the Purchase Price.  Rather, the Closing is defined as "the sale of the work and the transfer of title from the Seller to the Buyer," which "shall take place *forthwith after* the Buyer has paid the Purchase Price."  Title Provision (emphasis added).  Plaintiff's sole focus on the word "forthwith," Opposition at 6-7, is doubly wrong.  For one, "forthwith" has long been understood not to mean "instantaneously." *Bennett v. Lycoming Cnty. Mut. Ins. Co.*, 67 N.Y. 274, 276-77 (N.Y. 1876).  For another, Plaintiff myopically misses that the phrase is "forthwith after."  Title Provision.  That the transfer of title was meant to take place after Plaintiff paid—even soon or immediately so—makes plain that payment and title transfer were distinct events.  *Cf. Subaru Distrib.*, 2002 WL 413808, at *44 (concluding that a provision that one party held title until it "shall have invoiced the [products to the other party] . . . at which time title shall pass" "explicitly identified the exact moment when title passed" (internal quotation marks omitted)).  And although Plaintiff urges that this conclusion is at best ambiguous and thus inappropriate to make at the motion-to-dismiss stage, Opposition at 13, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation," *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted).

Ultimately, Plaintiff cannot avoid the "general rule" that "title passes not when the purchaser completes the payment obligation, but when the seller completes her or his performance with reference to the physical delivery of the goods." *U.S. S.E.C. v. Universal Exp., Inc.*, No. 04 Civ. 2322 (GEL), 2008 WL 1944803, at *7 (S.D.N.Y. Apr. 30, 2008) (internal quotation marks omitted).  Although "the parties could have explicitly agreed to have title pass at another time, or in another manner," *id.* at *8, they did not do so here.  Because the Carmichael Gallery never

delivered the painting to Plaintiff, Plaintiff never took title to the piece, and his conversion and replevin claims against LAC thus fail.

## B.    Unjust Enrichment

For similar reasons, the Court dismisses with prejudice Plaintiff's unjust-enrichment claim against LAC.  "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186 (2d Cir. 2023) (internal quotation marks omitted).  LAC argues that "because Plaintiff did not acquire title to the Painting, LAC's retention of the Painting cannot be said to be at Plaintiff's expense."  Motion at 7.  Plaintiff's only response to this argument is that he indeed "purchased the Artwork and obtained title upon payment of the Purchase Price."  Opposition at 11.  But as just explained, Plaintiff never obtained title to the painting.  So as with Plaintiff's conversion and replevin claims, because LAC "had not exercised unauthorized dominion over [Plaintiff's] . . . personal property," nor can Plaintiff plead that LAC was "unjustly enriched at [Plaintiff's] expense."  *Carroccio v. Camia*, --- N.Y.S.3d ----, 244 A.D.3d 1053, 1054-55 (2d Dep't 2025) (rejecting intertwined conversion and unjust-enrichment claims).

## IV.  Conclusion

For the above reasons, the Court grants LAC's motion to dismiss Plaintiff's claims with prejudice.  The Clerk of Court is respectfully directed to close Docket Number 30 and to terminate Defendant Luxury Asset Capital, LLC from the docket.

SO ORDERED.

Dated: March 5, 2026
        New York, New York

_____
JOHN P. CRONAN
United States District Judge

10